## THE KAMBIRA.

(District Court, S. D. Alabama. January 9, 1900.)

### No. 882.

SEAMEN—RIGHT TO DISCHARGE—MISUNDERSTANDING AS TO VOYAGE.

Under the maritime law of Great Britain, it is the duty of the master, in shipping seamen, to see that the contract is clear and explicit, and that the seamen are informed of the precise voyage for which they engage; and where it appears that such duty was not performed, and that seamen shipped in a foreign port without the sanction and attestation of the consular officer, as required by the merchant shipping act, signed under a misapprehension as to the voyage, and with the understanding that it was to terminate at a certain port, they will be there released by a court of admiralty, although it does not appear that there was any intention to practice a fraud upon them.

In Admiralty. Action by seamen to obtain their discharge and recover wages.

Smith & Gaynor, for libelants.
Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. The law of Great Britain, as found in the merchant shipping act and the decisions of the courts, is that the mariner is entitled to know what is the precise voyage for which he undertakes. It is the duty of the master to see that the contract between him and the seaman is clear and explicit. If it is doubtful, the construction most favorable to the seaman will be adopted. 2 Pritch. Adm. Dig. 2137, 2138. The engagement of the three libelants in this case who were shipped at Rio had not the indorsement of the sanction and attestation of the consular officer, as required by the merchant shipping act, and it is held that in such case the burden of proving the engagement lies upon the master. Id. It is also held by the English courts that seamen are in the court of admiralty considered as favorites of the law, and are placed particularly under its protection against circumvention, and even misapprehension and error, and the court will give the seaman the benefit of any doubt. Id. In this case the master has not fully met the burden of proving the engagement of these libelants. He, in a general way, refers to the shipping articles to show it; but he admits that he did not read them to the libelants, though he offered

to do so. He did not explain them, at least explicitly or definitely. He says the libelants stated that they did not wish them read. The libelants say that is true, but they say that the master had said to them the voyage was to Mobile, and that they understood it was to Mobile, and there they were to be paid off, and, if that was so, they did not wish the articles read, to which they say the master assented. The master does not pointedly deny this. Neither does he say that he explained or explicitly stated to the libelants what the voyage was. He qualifiedly admits the libelants' said statement by saying that he may have said the voyage was to Mobile or to Mobile or Ship Island. The evidence satisfies me that, if the engagement was not explicitly made for a voyage to Mobile, then the contract between the parties was not clear and explicit, as it should have been. The libelants were entitled to know what was the precise voyage for which they undertook. The evidence (the testimony of the libelants and other facts and circumstances shown in the case) leads me to believe that the precise voyage, as understood by the libelants, was to be to Mobile. If it be doubtful what the contract was, the construction most favorable to the seamen should be adopted. The authorities hold that the court will give them the benefit of any doubt.

It is charged in the libel that the master practiced a fraud on the libelants in engaging and shipping them as he did. I do not believe that the master intended to deceive them, or that he was guilty of any fraud in his engagement with them, but I do not think he did his duty in the premises. I do not believe he intended to circumvent them at the time of their shipping with him, but he did not explain to them clearly and explicitly the contract. If he intended to ship them for the balance of the period of three years, as now claimed, the evidence does not show that he did so, but the contrary appears. To say the least of it, there was misapprehension on the subject, and the court should protect the seamen against misapprehension, by which they might be circumvented and a wrong done them. The seamen were sought by the master, and were shipped by him on October 2d on board of the ship. The certificate of the vice consul was affixed to the articles on October 3d. In the certificate he mentioned several seamen who were shipped at Rio, but the libelants were not of the number. The master makes some explanation why he did not ship these men before the vice consul, or report them to him, which it is unnecessary to notice further than to say that the articles show that two of the crew did not join the ship. My opinion is that the libelants are entitled to their discharge.

I take jurisdiction of the case because of its peculiar circumstances. The contract was not made according to the law, and, while I do not believe there was any fraud in the transaction, misapprehension was shown from which circumvention and injustice might result. The vice consul refused to discharge these men without the consent of the master. He made no inquiry or investigation into the facts of the case, and, inasmuch as the master did

not consent to the discharge, it was not given. The cause of the refusal to give such consent may have been from fear of the laws of this country relating to immigration. I am inclined to think, from all the circumstances, that such was the case. If so, the decree in this case will doubtless protect the master and the ship from any trouble in the matter.